UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Dennis Paren, | : |
|       Plaintiff, | : Civil Action No. 04-30127-MAP |
|       v. | : |
| James Craigie, Individually and Daniel Frey, Individually, | : |
|       Defendants. | : |

**CASE MANAGEMENT REPORT
OF DEFENDANTS JAMES CRAIGIE AND DANIEL FREY**

In anticipation of the Case Management Conference scheduled for June 30, 2005, Defendants James Craigie and Daniel Frey (collectively, "Defendants") hereby submit their Case Management Report.

**I.    THE PARTIES**

Plaintiff Dennis Paren has brought this lawsuit solely against Mr. Craigie and Mr. Frey in their individual capacities.

Mr. Craigie is the former President and Chief Executive Officer of Top-Flite Golf Company f/k/a Spalding Sports Worldwide ("Old Top-Flite"). He left Old Top-Flite on September 15, 2003, when Callaway Golf Company ("Callaway") acquired the golf businesses of Old Top-Flite after filing for bankruptcy in June of 2003. Mr. Craigie was never employed by the surviving entity, the Top-Flite Golf Company ("New Top-Flite"), which is a wholly-owned subsidiary of Callaway.

Mr. Frey is the former Chief Financial Officer of Old Top-Flite. He left Old Top-Flite in June of 2003. He was never employed by New Top-Flite.

Plaintiff held the position of Director of Risk Management for Old Top-Flite. After the Callaway acquisition, he continued to hold this position with New Top-Flite until his job was eliminated on December 5, 2003. Upon his termination, Plaintiff received severance of $122,000, equivalent to one year's salary, but did not sign a release. He continued to be retained as a consultant by the bankrupt estate of Old Top-Flite for a period of months and then quickly found other, comparable employment.

## II.     THE PARTIES' CLAIMS AND DEFENSES

Plaintiff filed this lawsuit on July 2, 2004. In his Complaint, Plaintiff purports to assert claims of defamation, intentional interference with contractual relations, and intentional interference with advantageous business relations against Mr. Craigie and Mr. Frey. However, Plaintiff's claims boil down to two basic points. First, Plaintiff claims that Mr. Craigie and Mr. Frey did not select him for a retention bonus in April 2002 and June 2003 in retaliation for Plaintiff's complaints about alleged improper or illegal activity at the Company. Second, Plaintiff claims that Mr. Craigie and Mr. Frey terminated his employment with New Top-Flite in retaliation for making these alleged complaints.

Defendants deny Plaintiff's allegations. First, as confirmed in the depositions of the General Counsel and former Senior Vice President of Human Resources of Old Top-Flite and New Top-Flite, Plaintiff was not selected for a retention bonus because his position was not critical to the continuing viability of the Old Top-Flite. There was no other reason. Indeed, in his deposition, Plaintiff could not point to any facts to discredit this valid business reason.

Second, as Plaintiff conceded in his deposition, Mr. Craigie and Mr. Frey were never employed by New Top-Flite. Rather, the decision to eliminate Plaintiff's position was made by

Brad Holiday, Callaway's Chief Financial Officer, <u>after</u> the Callaway acquisition.  Mr. Craigie and Mr. Frey had no involvement in, or influence upon, Mr. Holiday's decision to eliminate Plaintiff's position with New Top-Flite on December 5, 2003.  <u>See</u> Affidavits of Brad Holiday and Victor Varga, attached hereto as Exhibits A and B.  Plaintiff and his counsel have never provided any explanation for failing to sue New Top-Flite or its parent company, Callaway.

### III. <u>STATUS OF DISCOVERY</u>

Pursuant to the Court's December 10, 2004 Scheduling Order, discovery closed on May 31, 2005, the date that the parties jointly proposed in their Joint Statement submitted on December 3, 2004.  In accordance with the Court's Scheduling Order and as reflected below, discovery was complete as of May 31, 2005.

    **1.** **Written Discovery, The Production Of Documents And Third-Party Discovery**

Defendants responded to Plaintiff's interrogatories, and provided documents in their possession, custody or control (including certain documents which are subject to a confidentiality agreement) that are responsive to Plaintiff's document requests.  In addition, Defendants obtained certain documents from New Top-Flite and served subpoenas upon a number of third parties (including the custodian of records of Old Top-Flite) to obtain additional information and documents relating to Plaintiff and his claims.  Defendants provided copies of all documents obtained from such third parties to Plaintiff.

Plaintiff responded to Defendants' interrogatories and provided copies of documents in response to Defendants' document requests.[1]  Plaintiff attempted to serve subpoenas upon New Top-Flite and Callaway, but, upon information and belief, was unsuccessful in doing so.

---

[1] Notably, Plaintiff did not provide a copy of his "diary" until after his deposition, even though the diary was responsive to Defendants' document requests.

3

### 2. **Depositions**

On April 29, 2005, Defendants took Plaintiff's deposition in Springfield. In addition, on May 20, Defendants deposed Peter Arturi, General Counsel, and Vaughn Rist, former Senior Vice President of Human Resources, of Old Top-Flite and New Top-Flite. Mr. Arturi and Mr. Rist provided sworn deposition testimony which wholly exonerated Mr. Craigie and Mr. Frey. They further testified that even if Plaintiff had been selected for a retention bonus, the total amount of the bonus would not have exceeded $24,000.

Notably, Plaintiff's counsel originally noticed the depositions of Mr. Arturi and Mr. Rist, but she decided not to take them. Rather, Plaintiff's counsel negotiated a scheme by which Plaintiff released all claims against New Top-Flite and Callaway – i.e., the entities that actually terminated Plaintiff's employment – in exchange for obtaining "nuggets" from Mr. Arturi and Mr. Rist to use against Mr. Craigie and Mr. Frey. Plaintiff executed the release on May 10. When Defendants learned about this scheme, they sought to depose Mr. Arturi and Mr. Rist in order to protect the integrity of the record evidence.

The parties had also agreed to conduct the depositions of Mr. Frey and Mr. Craigie on May 12 and 13, in Princeton, New Jersey.[2] However, Plaintiff's counsel opted not to take these depositions, either. Using the pretense that Defendants' written discovery responses served on April 27 were suddenly inadequate, on May 11, Plaintiff's counsel postponed the depositions, even though Mr. Craigie and Mr. Frey remained available on May 12 and 13, and even though Plaintiff's counsel was aware that she was waiving the opportunity to take these depositions at a later time. Plaintiff's counsel's real reason for postponing the depositions was to buy time to

---

[2] Neither Mr. Craigie nor Mr. Frey has any connection to Massachusetts. Mr. Craigie works in Princeton. Mr. Frey works in New York, but was willing to travel to Princeton so that the depositions could be conducted in one place.

meet with Mr. Arturi and Mr. Rist after Plaintiff's execution of the release. Indeed, Plaintiff's counsel met with Mr. Arturi, Mr. Rist and their attorney on May 18. See generally Newman letter to Brodeur-McGan dated May 16, 2005, attached as Exhibit C.

### IV. STATUS OF SETTLEMENT DISCUSSIONS

On March 7, 2005, the parties attended an Alternative Dispute Hearing before Magistrate Judge Charles Swartwood. However, even though Plaintiff mitigated his damages and actually made $100,000 more in the year after his employment was terminated, and even though Plaintiff's retention bonus (if he had been entitled to one) would not have amounted to more than $24,000, the parties were unable to reach a resolution of this matter.

### V. DEFENDANTS' PROPOSED SCHEDULE

Defendants are prepared to file a motion for summary judgment with respect to all of the claims in Plaintiff's Complaint. Defendants accordingly propose the following schedule:

| | |
|---|---|
| August 15, 2005 | Deadline for dispositive motions |
| September 14, 2005 | Deadline for responses to dispositive motions |
| September 28, 2005 | Deadline for reply memoranda |

In the event that the Court does not dispose of all claims by dispositive motion, Defendants respectfully propose that the Court set a date certain for trial not less than sixty (60) days after the Court adjudicates such dispositive motion.

## VI. CONCLUSION

       Defendants look forward to discussing the status of this case, including the issues raised above and in the attachments to this Report, at the Conference on June 30, 2005.

                              The Defendants
                              JAMES CRAIGIE, INDIVIDUALLY AND
                              DANIEL FREY, INDIVIDUALLY
                              By Their Attorneys

                              /s/ Jeffrey E. Poindexter
                              Jeffrey E. Poindexter, BBO #631922
                              Bulkley, Richardson and Gelinas, LLP
                              1500 Main Street, Suite 2700
                              Springfield, Massachusetts 01115
                              Tel. 413-781-2820; Fax. 413-785-5060

                              Of Counsel:
                              Steven R. Wall (admitted *pro hac vice*)
                              Tamsin J. Newman (admitted *pro hac vice*)
                              Morgan, Lewis & Bockius LLP
                              1701 Market Street
                              Philadelphia, PA  19103
                              215.963.4928/5201

Dated: June 28, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above Case Management Report of Defendants James Craigie and Daniel Frey was filed electronically and served upon Lisa Brodeur-McGan by facsimile on Tuesday, June 28, 2005.

                                                     /s/ Jeffrey E. Poindexter
                                                  Jeffrey E. Poindexter, Esquire