UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Dennis Paren, | : |
|                     Plaintiff, | :   Civil Action No. 04-30127-MAP |
| v. | : |
| James Craigie, Individually and<br>Daniel Frey, Individually, | : |
|                     Defendants. | : |

### AFFIDAVIT OF BRAD HOLIDAY

I, Brad Holiday, depose and state as follows:

1. I am employed by The Callaway Golf Company ("Callaway") as the Chief Financial Officer, a position I have held since August 2000. Among my duties is the responsibility for overseeing the financial, tax and risk management functions of Callaway and its subsidiaries and affiliates.

2. Effective September 15, 2003, a wholly-owned subsidiary of Callaway, then known as TFGC Acquisition Corp. ("TFGC"), acquired the golf businesses of The Top-Flite Golf Company ("Old Top-Flite"), a wholly-owned subsidiary of SHC, Inc. TFGC subsequently changed its name to The Top-Flite Golf Company ("New Top-Flite").

3. Prior to the acquisition, I had discussions with certain members of Old Top-Flite's senior management team concerning potential synergies that might result from the acquisition, including functions that might become redundant as a result. However, those discussions were in very general terms, and did not result in any one function or employee being targeted for elimination.

4.  Following the acquisition, I began the process of assessing the synergies of New Top-Flite and Callaway from an overall organizational perspective, with the goal of eliminating any redundancies within my supervision. As part of this process, I met with Victor Varga, who was then the Director of Financial Planning and Analysis at Old Top-Flite and who continued to hold this position at New Top-Flite, to identify potential redundancies within the two organizations.

5.  Based upon information provided to me by Mr. Varga, I decided that, in addition to consolidation of other functions, the risk management function of New Top-Flite could be consolidated with the existing risk management function at Callaway. As a result, I made the decision to eliminate a number of redundancies within my supervision including, but not limited to, the position of Director of Risk Management at New Top-Flite, which position was held by Dennis Paren.

6.  James Craigie, who was the President and Chief Executive Officer of Old Top-Flite and who had left as of September 15, 2003, had no influence upon my decision to eliminate Mr. Paren's position following the Callaway acquisition.

7.  Daniel Frey, who was the Chief Financial Officer of Old Top-Flite and who left in June of 2003, had no influence upon my decision to eliminate Mr. Paren's position following the Callaway acquisition.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing information is true and correct, based upon my knowledge, information and belief.

_____
BRADLEY J. HOLIDAY

DATED: June 3, 2005

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Dennis Paren,

        Plaintiff,

v.

James Craigie, Individually and
Daniel Frey, Individually,

        Defendants.

Civil Action No. 04-30127-MAP

### AFFIDAVIT OF VICTOR VARGA

I, Victor Varga, depose and state as follows:

1. In September of 2001, I was hired as Director of Financial Planning and Analysis at Top-Flite Golf Company f/k/a Spalding Sports Worldwide ("Old Top-Flite"), a wholly-owned subsidiary of SHC, Inc.

2. Effective September 15, 2003, a wholly-owned subsidiary of The Callaway Golf Company ("Callaway"), then known as TFGC Acquisition Corporation ("TFGC"), acquired the golf businesses of Old Top-Flite. TFGC subsequently changed its name to the Top-Flite Golf Company ("New Top-Flite"). Following the Callaway acquisition, I continued to be employed as Director of Financial Planning and Analysis at New Top-Flite.

3. In or about October of 2003, I met with Brad Holiday, the Chief Financial Officer of Callaway, in Springfield, Massachusetts. At Mr. Holiday's request, I provided an overview of the organizational structure of the finance function of New Top-Flite, and

EXHIBIT B

informed him that certain functions appeared to be redundant with functions at the corporate level at Callaway. These functions included tax, risk management, treasury, and credit and collection.

4. The information I provided to Mr. Holiday was based upon my own independent assessment of the apparent redundancies within the organization. Daniel Frey and James Craigie did not have any input in, or influence upon, the information I provided to Mr. Holiday.

5. It is my understanding that the position of Director of Risk Management of New Top-Flite, held by Dennis Paren, was eliminated in December of 2003. Aside from the above, I had no involvement in the decision to eliminate that position.

6. My position was eliminated in February of 2004. I am no longer employed by New Top-Flite.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing information is true and correct, based upon my knowledge, information and belief.

_____
VICTOR VARGA

DATED: June 2, 2005

2

Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel: 215.963.5000
Fax: 215.963.5001
www.morganlewis.com

# Morgan Lewis
COUNSELORS AT LAW



Tamsin J. Newman
215.963.5201
tnewman@morganlewis.com

May 16, 2005

**Via Facsimile, E-Mail and First Class Mail**

Lisa Brodeur-McGan, Esq.
Brodeur-McGan, Attorneys at Law
1380 Main Street – Suite 201
Springfield, Massachusetts 01103-1440

    Re:    **Paren v. Craigie and Frey; D. Mass. No. 04-30127-MAP**

Dear Ms. Brodeur-McGan:

This letter responds to your letter of May 12, 2005, in which you provide specific comments regarding the written discovery responses of Defendants James Craigie and Daniel Frey and the confidentiality agreement served on April 27, 2005. Before we respond to your specific comments, your letter must be put in context.

1. **Background**

The gravamen of Plaintiff Dennis Paren's claims is twofold: (1) that he did not receive a retention bonus in 2002 and 2003 from Spalding/"old" Top-Flite; and (2) that the "new" Top-Flite terminated his employment in December 2003. However, Plaintiff did not sue Spalding, old Top-Flite, new Top-Flite, Callaway (new Top-Flite's parent company), or their successor companies. Plaintiff sued only Mr. Craigie and Mr. Frey in their individual capacities. As you know (and as Plaintiff conceded in his deposition), Mr. Craigie and Mr. Frey are former executives of Spalding/old Top-Flite, *who were never employed by new Top-Flite, the company that actually terminated Plaintiff's employment.* Although we have raised this issue with you before, you have never provided any explanation for Plaintiff's failure to sue new Top-Flite.

On the same date that Plaintiff filed this lawsuit, he also filed a complaint with the Massachusetts Commission Against Discrimination against new Top-Flite, in which he acknowledged that new Top-Flite was the entity that terminated his employment and alleged that his termination constituted age discrimination. Inexplicably, Plaintiff has since voluntarily withdrawn his complaint against new Top-Flite. This fact, combined with Plaintiff's failure to sue the

**Morgan Lewis**
COUNSELORS AT LAW

Lisa Brodeur-McGan, Esquire
May 16, 2005
Page 2

appropriate defendants in our case, caused us to suspect that Plaintiff did not file this case based upon a good faith belief that his claims have any merit. Rather, this case is really about Plaintiff's pursuit of a personal vendetta against Mr. Craigie and Mr. Frey. Your actions in recent weeks confirm that suspicion.

As you know, the depositions of Peter Arturi, General Counsel of Top-Flite, and Plaintiff were scheduled to go forward in Springfield on April 28 and 29, respectively. However, at approximately 5 p.m. on the evening of April 27, you notified me that you had cancelled the deposition of Mr. Arturi. What you did not tell me was that, on behalf of Mr. Paren, you had offered to supply new Top-Flite with a release of all claims against it in exchange for meeting with Mr. Arturi and Vaughn Rist, Top-Flite's former HR manager, to obtain "nuggets" against Mr. Craigie and Mr. Frey. As a condition to giving a release, you insisted that counsel for Mr. Craigie and Mr. Frey not attend such a meeting. Thus, concerned that Mr. Arturi would give truthful testimony that would exonerate Mr. Craigie and Mr. Frey, you cancelled his April 28 deposition so that you could continue your scheme and meet with Mr. Arturi and Mr. Rist alone. At the risk of stating the obvious, we observe that your conduct in seeking to obtain information from new Top-Flite in exchange for a release is troubling from an ethical standpoint - - you have a duty to not allow your client to engage in a personal vendetta.

On April 29, 2005, Mr. Paren provided sworn deposition testimony that established, among other things, that: (1) he has no reason to believe that Mr. Craigie and Mr. Frey influenced or had any involvement in his termination by new Top-Flite; (2) Plaintiff assumes that Mr. Craigie and Mr. Frey did not select him for a retention bonus in retaliation for his complaints about alleged unlawful or improper conduct, but he can point to no facts to support this assumption; and (3) Plaintiff easily obtained other employment after his termination by new Top-Flite, and, in fact, his 2004 income exceeded his 2003 income by more than $100,000.

At Mr. Paren's deposition, you claimed that you had never received Defendants' discovery responses and confidentiality agreement, which were served by Federal Express on April 27 (and which Federal Express records confirm were delivered to your office on the morning of April 28). Nonetheless, I gave you another copy of the discovery responses and confidentiality agreement, and I told you that I had brought Mr. Craigie's responsive documents with me. I told you that if you signed the confidentiality agreement, I could provide you the documents then and there. You declined, and told me you would get back to me.

You did not get back to me the following week. Rather, you waited until May 9, 2005 – conveniently, the very week of the depositions of Mr. Craigie and Mr. Frey on May 12 and 13 – to inform us of your belief that their discovery responses were inadequate. You claimed that the purported inadequacy of the discovery responses justified your postponement of their depositions, which had been scheduled for months. Meanwhile, you had not yet finalized your scheme with new Top-Flite (specifically, you failed to deliver the signed release to Top-Flite's counsel in time for the 7-day revocation period under the ADEA to expire), and, as a result, you

Morgan Lewis
COUNSELORS AT LAW

Lisa Brodeur-McGan, Esquire
May 16, 2005
Page 3

had not met with Mr. Arturi and Mr. Rist in your quest to extract "nuggets" about Mr. Craigie and Mr. Frey.

Thus, the real reason why you did not want the depositions of Mr. Craigie and Mr. Frey to go forward - - you knew that Mr. Craigie and Mr. Frey would provide truthful testimony confirming that Plaintiff's claims were frivolous, and you were desperate to obtain any "nuggets" to be used against them before their depositions. In your May 11 e-mail to me, you confirmed that you had scheduled a meeting with the "Callaway agents" on May 18.

We made clear that Mr. Craigie and Mr. Frey continued to be available for their depositions on May 12 and 13, and that if you did not conduct these depositions, we would take the position that you had waived your opportunity to do so in the future. We told you that both your stated reason for canceling the depositions (i.e., the purported inadequacy of Defendants' discovery responses), as well as your real reason for doing so (i.e., to extract "nuggets" from new Top-Flite), were invalid.

We gave you numerous opportunities to reconsider your position. In response, you threatened to file an emergency motion with the Court, which you did not do. Rather, on May 11, you confirmed that you would not appear for the depositions. Later that day, you purported to return the signed confidentiality agreement, except that you added a paragraph allowing you to share confidential information with the IRS and other government authorities. On May 12, you sent us your letter commenting upon Defendants' discovery responses and the confidentiality agreement.

### 2. The Confidentiality Agreement

In light of the above, the assertion in your May 12 letter that the confidentiality agreement "was only meant to delay our receipt of necessary documents to prepare for the depositions" of Mr. Craigie and Mr. Frey is pure fantasy. Had you signed the agreement on or before April 29, I would have personally provided you with Mr. Craigie's responsive documents on that very day, as I had informed you. You did not bother to review it until the week of Mr. Craigie and Mr. Frey's depositions. Thus, any delay in your receipt of Mr. Craigie's responsive documents is attributable entirely to your own actions.

As reflected in Mr. Craigie's RFP Responses, the documents which will be produced upon your execution of the confidentiality agreement in its original form are copies of documents in Mr. Craigie's possession which are responsive to RFP Numbers 1 and 3. These documents are sensitive because they consist of high-level e-mails and other documents exchanged between Mr. Craigie and others in the negotiation of various confidential corporate transactions from 2001 through 2003.

We note that even if you disagreed with the designation of any document as Confidential Material under the confidentiality agreement, the agreement provides a procedure for resolving such disputes (¶2). This is a standard provision in any confidentiality agreement. Once you have executed the confidentiality agreement in its original form (not in the modified form you

**Morgan Lewis**
COUNSELORS AT LAW

Lisa Brodeur-McGan, Esquire
May 16, 2005
Page 4

provided on May 11, which is rejected), we will provide you with Mr. Craigie's documents and you will have the opportunity to dispute any confidentiality designation in accordance with the procedure set forth in the agreement.

3.   **Your Improper Request For Tax Information And Documents**

As we made clear in Defendants' RFP responses, Defendants' tax information and documents are completely irrelevant to Plaintiff's claims. See Frey RFP Nos. 8 & 9; Craigie RFP Nos. 8 &10. Nonetheless, Defendants are willing to produce such information and documents if: (1) you demonstrate that such information and documents are relevant to the parties' claims or defenses; (2) you demonstrate that such information and documents cannot be obtained by other means, and (3) you execute the confidentiality agreement. These conditions have not been met, and, therefore, Defendants' tax information and documents will not be produced.

We also reject your attempt to add a paragraph to the confidentiality agreement to allow you to share Confidential Material protected by that agreement with government officials, including the IRS. Obviously, this modification completely obliterates the protections of the confidentiality agreement. More important, however, is that Mr. Craigie and Mr. Frey's tax filings are wholly irrelevant to this case. Even if, as Plaintiff claims, Mr. Craigie and Mr. Frey did not make proper tax filings (which they vigorously deny), the relevant question is solely whether Mr. Craigie and/or Mr. Frey took into account Mr. Paren's purported complaints about alleged improper or unlawful conduct in the decision not to select Mr. Paren for a retention bonus. Had you taken Mr. Craigie and Mr. Frey's depositions, they would have provided sworn testimony that the answer is "no." Your attempts to involve the IRS and other government authorities amount to a sideshow that has nothing to do with this case, and which borders on extortion.

In sum, we invite you to execute the confidentiality agreement in its original form and to return it to us as soon as possible. Another copy is enclosed. Upon its receipt, we will overnight Mr. Craigie's documents to you.

4.   **Mr. Frey's Discovery Responses**

To the extent not provided above, below are our responses to your specific comments regarding Mr. Frey's discovery responses.

RFP 5: Mr. Frey has no obligation to obtain his diary from the Spalding system. The Federal Rules solely require him to produce documents in his possession, custody or control. You are free to subpoena them from the appropriate entity.

RFP 7: Mr. Frey has located two e-mails which are responsive to RFP Number 7, for which we do not claim confidentiality and copies of which we would have provided you at Mr. Frey's deposition on May 12. Copies of those documents are enclosed (FREY0001-0005).

RFP 8 & 9: See above regarding your improper request for tax information and documents.

**Morgan Lewis**
COUNSELORS AT LAW

Lisa Brodeur-McGan, Esquire
May 16, 2005
Page 5

<u>RFP 10:</u> Mr. Frey's response stands, despite your personal belief that it is "incredible." He does not have an employment contract with St. Paul Travelers.

<u>Interrogatory No. 2:</u> Mr. Frey's response stands. He was not a member of the Compensation Committee. If you want to ascertain the members of the Compensation Committee, you should subpoena that information from Top-Flite, which might be reflected in the minutes of the Board of Directors.

<u>Interrogatory Nos. 3 & 4:</u> Mr. Frey's response is to the best of his knowledge, information and belief. He has no knowledge, directly or indirectly, as to who was involved in the decision to cancel notes in exchange for the cancellation of stock, or as to whether any individual at Simpson Thatcher was consulted with regard to same.

<u>Interrogatory No. 7:</u> Mr. Frey does not recall a specific document to which he would defer. He simply wanted to make clear that to the extent that his recollection was inaccurate, he would not dispute the accuracy of any applicable Company documents.

<u>Interrogatory No. 9:</u> Mr. Frey stated that he does not recall. Again, he was not a member of the Compensation Committee.

<u>Interrogatory No. 10:</u> Mr. Frey's response stands for the reasons stated therein. Mr. Frey does not recall having either a formal or informal definition of a key employee during his tenure at Spalding, and you cannot compel him to have one.

<u>Interrogatory No. 11:</u> Mr. Frey's response stands for the reasons stated therein. Mr. Frey specifically described the factors that he considered in selecting 2002 retention bonus recipients.

<u>Interrogatory No. 12:</u> Mr. Frey's response stands for the reasons stated therein. Mr. Frey stated his general recollection as to how the amounts of 2002 retention bonuses were determined. Again, he does not recall a specific document to which he would defer. He simply wanted to make clear that to the extent that his recollection was inaccurate, he would not dispute the accuracy of any applicable Company documents.

<u>Interrogatory No. 13:</u> Mr. Frey generally recalls the following 2002 retention bonus participants: Mr. Kimmett, Mr. Lyon, Mr. Nigro, Mr. Varga, Mr. Tursi, Mr. Esch, Mr. Keindel, Ms. Rousseau, Mr. Several, Mr. Kennedy, Mr. Arturi, and himself. Frankly, we do not understand why you asked this question, given that documents filed in connection with the bankruptcy proceedings to which the public has access – and which *Plaintiff* produced in discovery – reflect this very information. This supposed "inadequacy" once again shows the improper motive behind your canceling of the depositions.

<u>Interrogatory Nos. 14:</u> Mr. Frey's response stands for the reasons stated therein, and your assertion that Mr. Frey "fails to respond to this Interrogatory in any way" is wrong. This interrogatory asked for identification of "who" participated in selection of the criteria used for retention bonuses and in selecting particular recipients. Mr. Frey identified the members of the Operating Committee.

**Morgan Lewis**
COUNSELORS AT LAW

Lisa Brodeur-McGan, Esquire
May 16, 2005
Page 6

Interrogatory No. 15: Although you do not refer to this interrogatory by number, you appear to refer to it in your discussion of No. 14. Mr. Frey's response stands for the reasons stated therein. Mr. Frey incorporated by reference his response to No. 11, which specifically described the factors that Mr. Frey considered in determining 2002 retention bonus recipients. He further stated that he does not have knowledge of the factors considered by others.

Interrogatory No. 17: Mr. Frey's response stands for the reasons stated therein. Mr. Frey does not recall a specific document to which he would defer, although it is possible that there are Human Resources documents outlining criteria for merit increases. You should subpoena that information from Top-Flite. To the extent that you seek "clarification" or a "complete understanding" of Mr. Frey's answer, you should have posed your questions directly to Mr. Frey at his deposition, which you cancelled.

Interrogatory No. 19: Plaintiff's evaluations are irrelevant to this case because they played no part in the decision to not select him for a 2002 retention bonus. Moreover, we provided you with Plaintiff's personnel file containing his evaluations, which was supplied to us by Top-Flite. Notwithstanding, Mr. Frey generally recalls that he asked employees to perform self-evaluations and that he conducted an independent evaluation, which he would then compare to the self-evaluation, although he does not recall if this was always the procedure. Mr. Frey generally recalls that he occasionally consulted with Operating Committee members to the extent that the employee had regular interaction with Operating Committee members. To the extent that you have follow-up questions, you should have asked them of Mr. Frey at his deposition, which you cancelled.

5.  **Mr. Craigie's Discovery Responses**

To the extent not provided above, below are our responses to your specific comments regarding Mr. Craigie's discovery responses.

Interrogatory No. 3: Mr. Craigie's response stands, and your assertion that Mr. Craigie "fails to completely respond" is wrong. Mr. Craigie gave you his best recollection of how persons were selected to receive a 2002 retention bonus and identified the Operating Committee as the entity that made the selections. Mr. Craigie was a member of the Operating Committee. To the extent that you have follow-up questions, you should have posed your questions directly to Mr. Craigie at his deposition, which you cancelled.

Interrogatory No. 6: Mr. Craigie's response stands. He answered to the best of his knowledge, information and belief. The interrogatory does not ask Mr. Craigie what documents he would rely upon to refresh his recollection. You could have asked that question of Mr. Craigie at his deposition, which you cancelled.

RFP 2: Mr. Craigie's response stands for the reasons stated therein. Mr. Craigie does not have any of the requested documents within his possession, custody or control. To the extent that you would "appreciate him listing which documents, if any, may be responsive to this and where they


Morgan Lewis
COUNSELORS AT LAW

Lisa Brodeur-McGan, Esquire
May 16, 2005
Page 7

are held," this was not requested. You could have asked this question of Mr. Craigie at his deposition, which you cancelled.

RFP 3: See above. Provide us with the signed confidentiality agreement in its original form, and we will produce the responsive documents.

RFP 5 & 7: Mr. Craigie's response stands. Mr. Craigie does not have any such documents in his possession, custody or control, and he has not attempted to obtain them from any other entity. You are free to subpoena them from the appropriate entity.

RFP 8: See above regarding your improper request for tax information and documents.

RFP 10: Mr. Craigie's permanently severed his employment relationship with Spalding/old Top-Flite in September 2003. He never had a consulting or any other arrangement with new Top-Flite or Callaway. This should answer your question and avert the need for his production of unrelated contracts entered into subsequent to Mr. Craigie's departure.

6.  **Conclusion**

In light of the above, we completely disagree with your statement that "there are multiple issues" regarding Defendants' discovery responses "that must be dealt with prior to Mr. Craigie and Mr. Frey's depositions." Rather, had you taken these depositions, the vast majority of your follow-up questions and requests for clarification could have been posed directly to, and answered by, Mr. Craigie and Mr. Frey at their depositions. That is the purpose of taking depositions. If you really wanted the truth underlying Plaintiff's claims and Defendants' defenses, you would have taken these depositions on May 12 and 13. We are confident that you will be sorely disappointed when you meet with "Callaway agents" on May 18 and learn that there are no "nuggets" against Mr. Craigie and Mr. Frey.

Throughout this litigation, Mr. Craigie and Mr. Frey have demonstrated that they have nothing to hide. Despite the objectionable nature of many of Plaintiff's written discovery responses, Mr. Craigie and Mr. Frey endeavored to answer them fully and to the best of their knowledge, information and belief. Their discovery responses fully complied with the Federal Rules. Similarly, Mr. Craigie and Mr. Frey looked forward to providing sworn deposition testimony on May 12 and 13 in order to clear their good names.

Morgan Lewis
COUNSELORS AT LAW

Lisa Brodeur-McGan, Esquire
May 16, 2005
Page 8


It is readily apparent that your actions are intended to prolong this frivolous litigation as long as possible in order to pursue Mr. Paren's personal vendetta against Mr. Craigie and Mr. Frey and to try to extract (or perhaps extort) a large settlement from them. Your actions have resulted in substantial expense and inconvenience for these individuals, as well as unnecessarily drained judicial resources. After discovery closes on May 31, 2005, the Defendants will present the Court with the truth. We look forward to the Court's decision.

Sincerely,

Tamsin J. Newman
Enclosures

cc:  Steven R. Wall, Esq.
     Jeffrey Poindexter, Esq.
     Katherine Emig, Esq.