UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENNIS PAREN,<br>    Plaintiff<br><br>v.<br><br>JAMES CRAIGIE, INDIVIDUALLY<br>and DANIEL FREY, INDIVIDUALLY<br>    Defendants | CIVIL ACTION NO.: 04-30127-MAP |

## CASE MANAGEMENT REPORT OF PLAINTIFF DENNIS PAREN

The plaintiff's discovery in this case has been intentionally frustrated by the conduct of defendants and their counsel continuously over the course of this case. As examples therefore, plaintiff refers to three specific instances of unreasonable conduct of defendants.

Defendants' counsel refused to produce defendants to Massachusetts' jurisdiction, requiring plaintiff to attend depositions in Princeton, New Jersey. Only after multiple threats of motions to compel did defense counsel agree to produce them on two separate days, and at first was requiring plaintiff to attend deposition starting early in the morning and continuing the same day until done. See Exhibit A. Defense counsel's reason stated was that defendants were "busy executives".

After successfully negotiating two separate days for the defendants' depositions, defendants failed to respond to written discovery and interrogatory requests in a reasonable manner. See Exhibit B. Despite plaintiff's attempt to seek a reconsideration of defendants' refusal to answer simple questions, defendants responded that the case was frivolous and, once again, refused to supplement any interrogatory questions. See Exhibit C. At the same time, plaintiff's efforts to obtain discovery documents through third parties was met with refusal and

excuses that persons were "too busy" to respond to subpoenas lawfully served under the rules of federal civil procedure.

Furthermore, plaintiff was required to serve Callaway Golf/Top-Flite Golf two separate times upon their agent for service of process, and each time it was returned because the exact name of the party was not stated. See Exhibit D. The discovery requests were necessary for plaintiff to be able to determine who participated in the decision to eliminate his position, and was necessary because defendants continued to maintain that they had no documents at all in their possession regarding the facts and circumstances of plaintiff's claims.

In addition, TFGC Estates, Inc. was lawfully served on March 26, 2005 with a Rule 30(b)(6) deposition subpoena. See Exhibit E. It failed to appear and failed to even contact plaintiff's counsel until eight days after the date it was scheduled to appear. The phone call came on or about May 10, 2005, wherein it became apparent to plaintiff's counsel from its counsel, Athanasios Agelakopoulos's statements that it had not even attempted to determine who held the documents and where they were.

Interestingly, after the close of discovery, plaintiff's counsel received in the mail from defendants a binder of hundreds of pages of documents, including employment agreements of James Craigie, retention bonus documents, multiple relevant bankruptcy documents and schedules of bonus payments (all documents responsive to requested discovery), that Attorney Newman simply requested of Walker, Truesdell & Associates, the entity formerly involved with TFGC Estate, Inc., and which were sent to Attorney Newman. See Exhibit F. These are the some of the same documents that plaintiff was seeking from TFGC counsel Athanasios Agelakopoulos that he stated he had no idea where the documents were and it would be burdensome to produce them.

The defendants depositions were scheduled for May 12 and 13, 2005. Plaintiff's counsel was in a position that she would be required to drive to Princeton, New Jersey to spend three

2

days there, including overnight stays, with no information, no documents, and no meaningful interrogatory responses from defendants. Furthermore, it should be pointed out that defendants' automatic discovery was insignificant, failed to describe the theory of defendants' defense, and failed to produce any documents relevant to its defense and failed to list witnesses. It was at that time that plaintiff's counsel made the decision to not go forward with the defendants' deposition and to attempt to get the discovery through Callaway or by other means. Defendants have now refused to produce the defendants to any deposition, taking the position that plaintiff waived his rights to do so.

Plaintiff negotiated a settlement with Callaway Golf, wherein it would agree to produce Vaughn Rist, a former human resource person of Callaway Golf and Top-Flite Golf, and Peter Arturi, former senior legal counsel to both entities and current legal counsel to Callaway Golf, in exchange for release of plaintiff's prior claims against Callaway and Top-Flite in the Massachusetts Commission Against Discrimination. See Exhibit G.

Two days later, defense counsel Tamsin Newman took the depositions of Mr. Rist and Mr. Arturi. At that time, she produced and marked in the course of her deposition exhibits that had been in her possession that had been given to her by Mr. Arturi a few months in advance. See Exhibit H. Defendants failed to produce these documents to plaintiff upon their counsel's receipt of them, despite the fact that it was required under automatic discovery, and despite the fact that the documents were in defendants' possession within meaning of discovery rules. Attorney Newman waited until the middle of the deposition to pull them out, one by one, to inquire for her own purposes to develop a record. It should be kept in mind that, days earlier, she refused to supplement interrogatories by continuing to maintain that defendants did not have this information in their possession. Some of these documents held the key to measuring damages for plaintiff, and it was at that time that plaintiff learned that the retention bonuses, at most,

would have been approximately $50,000 to the plaintiff. (Please note, this is estimated.) This was a critical piece of evidence held by defendants and never produced to plaintiff.

Additionally, defendants continue to hold information that is relevant and critical to this case until it is convenient for them. For instance, the Affidavits attached to Defendants' Case Management Report were never provided to plaintiff. In fact, plaintiff has been unable to determine who, if anyone, participated in the decision to terminate the plaintiff. Apparently, defendants have known all along that these two persons participated on some level in the decision to terminate Paren, but have failed to produce this information until the close of discovery and until once again, it is convenient for them. This is information that would have been relevant for automatic discovery and should have been produced at an earlier date.

For these same reasons plaintiff is seeking leave to file a motion to compel and a motion for sanctions against the defendants, and further is seeking to extend the discovery deadline for plaintiff alone for three months, and requiring defendants' to produce themselves to Springfield, Massachusetts jurisdiction at the offices of Brodeur-McGan, Attorneys at Law.

## Settlement Discussions

Settlement discussions had never commenced when defense counsel refused to negotiate before the March 7, 2005 mediation had even started, taking the position that the case was not worth anything and that I "had better not have high hopes about resolving it" except for a nominal amount of money. Defendants' counsel's forecast of the mediation process was accurate, despite that plaintiff flew in from Virginia to attend in good faith the mediation process. Plaintiff was never able to move from his original demand at the recommendation that the mediator, Magistrate Judge Swartwood, that the case was not going to settle.

Additionally, it should be noted that the defendants had evidence in their possession that could have persuaded plaintiff that the numbers he originally assumed were bonuses (and which was part of his damages calculation) were erroneous, and could have provided plaintiff with

4

those documents at that time and used the mediation process in a good faith manner, instead of setting it up to fail.

Based on these same documents that were produced during Mr. Rist and Mr. Arturi's depositions, plaintiff is now able to cut its demand in half from its earlier number and present it to defendants.

## Merits of Plaintiff's Claims

Plaintiff sued the defendants because he believed that they were the persons who made the decision to exclude Mr. Paren from the retention bonus programs. During the course of the depositions of Mr. Rist and Mr. Arturi, it was confirmed that defendants Daniel Frey and James Craigie were directly involved in the decision to exclude Mr. Paren from the retention bonuses, and in fact, Mr. Paren was the only finance person excluded from such retention bonuses. Additionally, Peter Arturi admitted that during the same conversation that he had with Daniel Frey as to why Mr. Paren was not included, he stated that his role was not vital and "he was a pain in the ass" because he stuck his nose in where it did not belong.

THE PLAINTIFF,
DENNIS A. PAREN

Date: June 30, 2005

By: _____
Lisa Brodeur-McGan, his attorney
Cooley, Shrair, P.C.
1380 Main Street
Springfield, MA 01103
BBO# 556755
Tel (413) 735-8025; Fax (413)733-3042

## CERTIFICATE OF SERVICE

I, Lisa Brodeur-McGan, do hereby certify that I made service of the foregoing document on this 30th day of June, 2005, by hand delivery to: Tamsin Newman, Esq., Morgan, Lewis & Bockius, LLP, 1701 Market Street, Philadelphia, PA 19103-2921; and Jeffrey E. Poindexter, Esq., Bulkley Richardson & Gelinas, LLP, 1500 Main Street, Suite 2700, Springfield, MA 01115.

_____
Lisa Brodeur-McGan

5