UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                    :
Dennis Paren,                       :
                                    :
            Plaintiff,              :     Civil Action No. 04-30127-MAP
                                    :
      v.                            :
                                    :
James Craigie, Individually and     :
Daniel Frey, Individually,          :
                                    :
            Defendants.             :
_____ :


**REPLY MEMORANDUM OF LAW OF
DEFENDANTS JAMES CRAIGIE AND DANIEL FREY
IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**


Jeffrey E. Poindexter, BBO #631922
Bulkley, Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
Springfield, Massachusetts 01115
Tel. 413-781-2820; Fax. 413-785-5060

Of Counsel:
Steven R. Wall (admitted *pro hac vice*)
Tamsin J. Newman (admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103
215.963.4928/5201

Dated:  November 14, 2005

I.  **INTRODUCTION**

Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Opposition Memorandum" or "Opp. Mem.") reads like a Hollywood screenplay - - a risk manager complains about corporate wrongdoing to a CEO and CFO, who then retaliate against him by excluding him from two retention bonuses for no reason and preclude him from his next job. Sadly, the risk manager ends up penniless, barely making ends meet.

Thankfully, this Court is not asked to play the role of movie producer, but instead is asked to consider and rule upon a Motion submitted pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. As Defendants James Craigie and Daniel Frey demonstrated in their opening Memorandum in support of their Motion ("Opening Memorandum" or "Defs.' Mem."), the material facts in this case are undisputed, and they wholly exonerate Defendants. While entertaining to read, nothing in Plaintiff's conclusory Opposition Memorandum or his self-serving "Affidavit" changes that conclusion. Specifically, it is still undisputed that:

- To the extent that Plaintiff raised concerns about alleged corporate improprieties, Mr. Craigie and Mr. Frey believed that he properly raised such concerns within the scope of his job duties as Director of Risk Management (see Defs.' Mem. at 5-6 and record citations therein);

- Mr. Frey did not recommend three of his direct reports in the Finance Department, including Plaintiff, for a retention bonus in 2001 based upon his belief that these three employees were not critical to the ongoing function of the Company, were not a risk to leave, and if they did leave, their work could be absorbed elsewhere in the organization (id. at 7-8);

- None of the members of the OCM, including Peter Arturi, the General Counsel, objected to Mr. Frey's retention bonus selections from the Finance Department (id.);

- When Mr. Frey left Spalding in June of 2003, he recommended that the Directors of Accounting, Treasury Operations and Financial Planning and Analysis – who assumed his CFO job duties – receive a supplemental bonus as incentive to remain

- with the Company, and Plaintiff did not assume any such duties (id. at 4, 13);

- In June of 2003, the OCM distributed supplemental retention bonuses from the limited funds that had been freed up by employee departures to additional employees whose functions were deemed essential to a smooth transition through the Callaway acquisition (id. at 13);

- Neither Mr. Frey nor Mr. Craigie has ever been employed by "New Top-Flite," Spalding's successor after the Callaway acquisition on September 15, 2003 (id. at 13-14);

- Victor Varga, Director of Financial Planning and Analysis at Spalding and New Top-Flite, has provided an unrebutted, sworn affidavit averring that Mr. Craigie and Mr. Frey had no influence upon his assessment of the redundancies within New Top-Flite, which he communicated to Brad Holiday, Callaway's CFO (id. at 17);

- Mr. Holiday has provided an unrebutted, sworn affidavit averring that he alone made the decision to terminate Plaintiff's employment in December of 2003, without any influence by Mr. Craigie or Mr. Frey, based upon his conclusion that the risk management function at New Top-Flite could be consolidated with that of Callaway (id.); and

- Following the termination of Plaintiff's employment, he received a full year's salary and found new employment almost immediately, thereby doubling his income in 2004 (id. at 18).

As demonstrated more fully below, there is simply no evidence that Mr. Craigie and Mr. Frey were motivated by Plaintiff's alleged reporting of his concerns in taking any adverse action against him. Moreover, Plaintiff fails to acknowledge, let alone address, the plethora of case law advanced by Defendants in support of their Motion. Moreover, the cases on which he relies are either inapposite or further support Defendants' cause. For these reasons, the Court should grant Defendants summary judgment with respect to all of Plaintiff's claims.

## II. THIS COURT SHOULD GRANT SUMMARY JUDGMENT WITH RESPECT TO ALL OF THE CLAIMS IN PLAINTIFF'S COMPLAINT

### A. Plaintiff Cannot Create A Fact Issue By Mischaracterizing The Record Evidence And Proffering A Self-Serving "Affidavit" As A Substitute For His Sworn Deposition Testimony

"The test for summary judgment is steeped in reality." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Put differently, a genuine issue of material fact cannot merely rest upon "spongy rhetoric," but rather requires substantive proof. Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003) (citations omitted). In this case, Plaintiff has not pointed to a single piece of substantive proof to support his claim that Mr. Craigie and Mr. Frey were motivated by Plaintiff's reporting of his concerns about alleged improper conduct to take adverse action against him. Where, as here, Plaintiff merely relies upon "conclusory allegations, improbable inferences, and unsupported speculation," summary judgment is appropriate. Medina-Munoz, 896 F.2d at 8, 9-10.

In his "Statement of Facts," Plaintiff attempts to muddy the waters with 84 paragraphs of purported factual statements. See Opp. Mem. at 4-12. However, none of these statements creates an issue of material fact in this case. As a preliminary matter, Plaintiff takes great liberties in his citations to the record. Many of his record citations simply do not support the factual assertion for which they are cited. For example, citing to the deposition transcripts of Mr. Arturi and Mr. Frey, Plaintiff claims that "Larry Kustra was also involved with some of the reporting of improprieties," and suggests that Mr. Frey retaliated against him as a result. See Statement of Facts, ¶8, see also Opp. Mem. at 19. However, neither record citation contains even a hint of this purported "fact," which apparently was fabricated out of whole cloth. See Arturi Dep. at 77 (Pl.'s Ex. B); Frey Dep. at 91 (Pl.'s Ex. C). The inaccurate record citations are so numerous as to suggest that Plaintiff is purposefully attempting to prevent a decision by this Court on the merits of the Motion. E.g., Statement of Facts, ¶¶6, 25, 26, 29, 30, 37, 38, 39, 52, 53, 54 55, 56, 74, 76, 77, 81. Accordingly, Defendants respectfully, and reluctantly,

3

urge the Court to not accept at face value any alleged record citations put forth by Plaintiff, because his assertions in his counsel's brief are largely fabricated.

Plaintiff also improperly relies upon his own "Affidavit," attached as Exhibit A to his Opposition Memorandum, in which he essentially attempts to "factualize" the allegations in his Complaint.[1]  In the Affidavit, Plaintiff glibly states that "[a]ll my allegations in the Complaint are true," and he provides 104 paragraphs of contentions and beliefs regarding a variety of topics about which he has no firsthand knowledge.  E.g., Pl. Aff. ¶11 ("Mr. Frey did not like this."), ¶29 ("This was done with a personal motivation..."); ¶33 ("I had a reasonable expectation [of receiving a retention bonus of $55,000"); ¶41 ("I believe this cast me in a bad light..."); ¶42 ("This negatively impacted me in the eyes of the management team..."); ¶50 ("[H]e gave them to those he chose to reward."); ¶71 ("Mr. Varga must have known. . ."); ¶¶83-84 ("It can be assumed..."); ¶98 ("Mr. Arturi's opinion probably would have been sought by Callaway..."); see also Pl. Aff. ¶¶46, 66, 71, 86, 89, 91, 94, 96; 100.  Again, however, conclusory argument and beliefs do not meet the standard under Rule 56 necessary to defeat summary judgment.  Medina-Munoz, 896 F.2d at 8, 9-10..

Moreover, Plaintiff's "Affidavit" is riddled with hearsay, which cannot create a triable issue of fact under Rule 56.  Scott v. Macy's East, Inc., No. Civ. A. 01-10323-NG, 2002 WL 31439745, at *13 (D. Mass. Oct. 31, 2002); e.g, Pl. Aff. ¶51 ("This was coupled with comments from multiple employees implying that my complaints on corporate improprieties had negatively impacted me, and comments that I 'had been screwed.'"); see also Pl. Aff. ¶¶20, 52, 61, 70, 76, 95.  Nor can Plaintiff contradict his earlier sworn deposition testimony in which he acknowledged that he lacked firsthand knowledge as to the issues about which he purports to aver in his "Affidavit." E.g., Colantuoni v.

---

[1]  On at least one occasion, Plaintiff even attempts to cite to his Complaint as if it were part of the record, which is, of course, improper.  See Opp. Mem. at 18; Bransford & Petz, P.C. v Bank of Am. Comm. Finance, No. 2003-11466, 2005 WL 1668224 at *4-5 (D. Mass. June 13, 2005).

4

Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994); e.g., Pl. Dep. at 67, 69, 96, 105, 139-146.[2]

In view of the above, the Court should not credit any of the assertions in Plaintiff's Statement of Facts because, put simply, they are not facts. For this reason alone, there is no genuine issue of material fact, and the Court should grant Defendants summary judgment with respect to all of Plaintiff's claims.

### B. This Court Should Grant Summary Judgment To Defendants With Respect To Plaintiff's Defamation Claims (Counts I And II)

#### 1. The Alleged Statements At Issue Were Protected By The Conditional Privilege

Plaintiff's defamation claims are based on a handful of statements made by Messrs. Craigie and Frey, each of which are addressed in Defendants' Opening Memorandum. Plaintiff wishfully argues that the alleged statements made by Messrs. Craigie and Frey are "outside the purview of the conditional privilege" – of course citing neither facts or legal analysis. See Opp. Mem. at 15-21. This argument has no legal or factual basis, and the Court should reject it.[3]

---

[2] For ease of reference and in order to demonstrate the totality of the facts about which Plaintiff does and does not have knowledge according to his sworn deposition testimony, a complete copy of Plaintiff's deposition transcript in minuscript format s attached as Exhibit 1.

[3] Plaintiff argues that his Complaint "alleges at least four instances" of defamation by Mr. Craigie, but fails to identify the two additional purported instances. Defendants venture a guess that Plaintiff may be referring to the two exhibits to the bankruptcy filing identifying those employees entitled to participate in the original Retention Bonus Program and those entitled to a supplemental bonus (which Plaintiff refers to as the "2002 KERP" and "2003 KERP"), which exhibits were filed under seal. See Defs.' Ex. M, at 9 n.1. Plaintiff's defamation claims based upon these newfound "instances" fail for at least three separate and independent reasons. First, Defendants had no notice that Plaintiff's defamation claims were based upon the exhibits to the bankruptcy filing, and Plaintiff should be precluded from relying upon them now. In his interrogatory responses, Plaintiff specifically identified only two instances of defamation by Mr. Craigie. See Plaintiff's Interrogatory Response Nos. 1 & 3 (attached hereto as Ex. 2). Nor did Plaintiff supplement his interrogatory response pursuant to Fed. R. Civ. P. 26(e) in a written discovery response or in his deposition. Second, even if the Court could consider the bankruptcy exhibits as forming a basis for Plaintiff's defamation claim against Mr. Craigie, the exhibits described the relief sought in the bankruptcy proceeding, and, as such, fell squarely within the judicial or absolute privilege. E.g., Sullivan v. Birmingham, 416 N.E.2d 528, 530 (Mass. App. Ct. 1981) (holding that statement in court filing is absolutely privileged because challenged statement was pertinent to the judicial proceeding). Third, there is no evidence that Mr. Craigie and Mr. Frey directly published the KERP exhibits to the bankruptcy court, much less published them unnecessarily or unreasonably. Id. at 532-22. (continued).

5

In their Opening Memorandum, Defendants cited to thirteen cases in which courts applying Massachusetts law held that the conditional privilege protected statements made by supervisors, executives of corporate officers in the employment context, including, inter alia, statements that an employee was "dangerous" and statements accusing an employee of selling drugs, company theft, having mental problems and violating professional standards. See Defs.' Mem. at 22-24 and cases cited therein. The courts in these cases found that such statements – which are much more egregious than the alleged statements at issue here – were in furtherance of a legitimate business interest. Id. Plaintiff offers no explanation as to why the Court should not follow this well-established authority, nor can he. Indeed, he fails to acknowledge that the authority exists at all.[4]

Nor has Plaintiff demonstrated that Defendants abused the conditional privilege. Plaintiff carries the burden to show that the conditional privilege has been abused by proving that Defendants knew the information to be false, had no reason to believe it to be true, or recklessly published the information unnecessarily, unreasonably, or excessively. Sklar v. Beth Israel Deaconess Med. Ctr., 797 N.E.2d 381, 388 (Mass. App. Ct. 2003). Mere negligence is not enough. Bratt v. Int'l Bus. Machs.

---

Fourth, for the reasons set forth in Defendants' Opening Memorandum and herein, a communication reflecting the decision not to select Plaintiff for a retention bonus falls within the conditional privilege.

[4] Plaintiff suggests Mr. Craigie's e-mail of September 18, 2003 is not protected by the conditional privilege because Plaintiff was no longer employed by Spalding as of the Callaway acquisition on September 15, 2003. See Opp. Mem. at 15 n.1; Defs.' Ex. O. However, it is undisputed that Mr. Craigie was responding to accusations about his work conduct that were made by Plaintiff on September 12, 2003, while Mr. Craigie was still employed by Spalding. See Paren letter to Scott Graves dated 9/18/03 (Defs.' Ex. N) (stating that he had lodged his accusation against Mr. Craigie "last Friday," which was September 12, 2003). It is well-established that the conditional privilege applies to statements about an employee's conduct at work based upon the principle that the publisher and recipient share a common interest. E.g., Cornwell v. Dairy Farmers of Am., 369 F.Supp.2d 87, 111 (D. Mass. 2005). Applying this principle, there is no reason why the conditional privilege would not equally apply to an employee's statements in response to questions regarding his work conduct. Plaintiff has not cited to a single case that so holds, nor can he. Finally, Plaintiff's assertion that the conditional privilege somehow does not apply because he did not sue the employer, Spalding, is nonsensical. The conditional privilege applies based upon the context in which statements are made, not based upon the identities of the defendants in some future lawsuit.

Corp., 467 N.E.2d 126 (Mass. 1984).  Here, Plaintiff solely relies upon suspicions and conjecture – rather than a single piece of record evidence – to support his belief that Mr. Craigie and Mr. Frey abused the privilege.  E.g., Opp. Mem. at 15 (relying upon his self-serving "Affidavit" and asserting that "Paren maintains that Craigie knew or should have known that [the statements] were false"; Opp. Mem. at 18 (speculating, without any citation to the record, that Mr. Frey's statements made prior to his departure in June 2003 "were indeed published recklessly and maliciously" to Peter Arturi and Vaughn Rist, Spalding's General Counsel and Human Resources Director, respectively, because Mr. Frey somehow should have known that they would republish his statements to Callaway after the acquisition in September of 2003).[5] Where, as here, Plaintiff merely speculates as to the recklessness or ulterior motives of the speaker, there is no issue of fact and Defendants are entitled to summary judgment.  Boudrealt v. Chesapeake Biological Labs., Inc., No. 010443, 2005 WL 1812312, at *4 (Mass. Super. May 25, 2005); see also Cornwell, 369 F.Supp.2d at 112.

Moreover, neither of the cases upon which Plaintiff relies can save his defamation claims from summary judgment.  Gram v. Liberty Mutual Ins. Co., 429 N.E.2d 21 (Mass. 1981), does not involve a defamation claim, and its facts have nothing whatsoever to do with "deleting a person from an initial list of employees to be retained for malicious reasons," as Plaintiff misleadingly suggests.  See Opp. Mem. at 18, 20.  Draghetti v. Chmielewski, 626 N.E.2d 862 (Mass. 1994), is also inapposite.  See Opp.

---

[5] To the extent that Plaintiff suggests that the placement of certain documents into his personnel file constituted reckless publication, this argument fails.  It is undisputed that Mr. Rist, Spalding's Human Resources Director, maintained the personnel files of Spalding employees, not Mr. Craigie or Mr. Frey.  See Craigie e-mail to Paren dated 9/18/03 (Defs.' Ex. O); Rist Dep. at 74-75 (Defs.' Ex. H).  Indeed, Plaintiff has provided sworn deposition testimony that he did not challenge the placement of such documents in his personnel file.  See Pl. Dep. at 91, 103 (Defs.' Ex. A).  Plaintiff cannot now recant that sworn deposition testimony in an attempt to escape summary judgment. See Dambreville v. City of Boston, 945 F.Supp. 384, 386 (D. Mass. 1996).  Moreover, courts have held that placement of a document in a personnel file does not constitute actionable defamation.  E.g., Galdauckas v. Interstate Hotels Corp., 901 F. Supp. 454, 470-471 (D. Mass. 1995).

7

Mem. at 14. In that case, a police chief made statements about a police officer to a newspaper, and the jury found that the police chief knew the statements to be false when he made them. Id. at 869. The Court found that the conditional privilege did not apply because the statements had been made to a newspaper, as distinguished from cases in the employment context in which statements were published to a "narrow group who shared an interest in the communication." Id. at 867. Here, the alleged statements were not made to a newspaper and there is no evidence that Defendants knew the statements to be false. Therefore, Draghetti cannot save Plaintiff from summary judgment.

In view of the above, the conditional privilege applies, and for this reason alone, Defendants are entitled to summary judgment with respect to Plaintiff's defamation claims.

### 2. Even If Not Protected By The Conditional Privilege, The Alleged Statements Were Not Defamatory

Plaintiff alternatively argues that his defamation claims are still viable because the alleged statements at issue (a) did not constitute statements of opinion, and (b) were "per se actionable." See Opp. Mem. at 18, 21. Both of these arguments fail.

First, as Defendants demonstrated in their Opening Memorandum, all of the alleged statements constituted expressions of opinion and reasonably could not be construed as stating facts. See Defs.' Mem. at 25-26, 28. Indeed, the alleged statements at issue are analogous to statements in the cases in which "mere vituperation" and "abusive taunts" in the employment context were found to constitute opinions, rather than actionable defamation. See Defs.' Mem. at 21 and cases cited therein. Plaintiff does not acknowledge these cases, let alone explain why they should not apply. The fact that Plaintiff vigorously disagrees with the opinions expressed by Defendants is irrelevant to the issue of whether they constituted opinions in the first place. E.g., Opp. Mem. at 20 (arguing that Plaintiff was a key employee worthy of a retention bonus).

Nor is this a situation in which the alleged statements of opinion implied the existence of undisclosed facts upon which the opinion was based. As the Supreme Judicial Court of Massachusetts has explained:

> A simple expression of opinion based on disclosed or assumed nondefamatory facts is not itself sufficient for an action for defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is. But an expression of opinion that is not based on disclosed or assumed facts and therefore implies that there are undisclosed facts on which the opinion is based, is treated differently. Thus if I write, without more, that a person is an alcoholic, I may well have committed a libel prima facie; but it is otherwise if I write that I saw the person take a martini at lunch and accordingly state that he is an alcoholic.

Lyons v. Globe Newspaper Co., 612 N.E.2d 1158, 1161 (Mass. 1993) (cites and quotes omitted). The rationale for this rule is that, where a statement of opinion is based on disclosed and nondefamatory facts, the communication itself indicates to the recipient that there is no defamatory factual statement. Id. at 1161 n.5 (citing Restatement (Second) of Torts §566 (1977)); see also id. at 1164. In determining whether a statement of opinion is based on disclosed and nondefamatory facts, the Court must examine the totality of the circumstances in which the statement was published. Id. at 1162. Thus, in Lyons, the Court held that the challenged newspaper article (which characterized picketers as having taken a political convention "hostage" using "brute force" and likened their conduct to the Sandinistas) "clearly indicated to the reader that the proponent of the expressed opinion engaged in speculation and deduction based on disclosed facts." Id. at 1163.

Similarly, here, all of the e-mails at issue, when read in context, clearly indicate to the reader that Mr. Craigie and Mr. Frey were simply expressing their opinion with respect to the pertinent subject matter; there is no implication of undisclosed, defamatory facts. See Exhibits L, O. The alleged verbal statements at issue, when considered in context, also were clearly statements of opinion. Plaintiff cannot seriously argue that the statements regarding "one of those Dennis Paren faces" and "Mr.

9

Sunshine" amounted to at the very most "mere vituperation and abuse" which courts have squarely held are expressions of opinion. Galdauckas, 901 F. Supp. at 471; Fleming v. Benzaquin, 454 N.E.2d 95, 103 (Mass. 1983); Carozza v. Blue Cross and Blue Shield of Mass., Inc., 14 Mass.L.Rptr. 88, 2001 WL 1517584, at *13-14 (Mass. Super. 2001). Moreover, Mr. Frey's statement that Plaintiff was a "pain in the ass" was made to Mr. Arturi, Spalding's General Counsel, in the context of a discussion regarding Plaintiff's repeated complaints about not being selected for a retention bonus. See Frey Dep. at 180 (Defs.' Ex. C); Arturi Dep. at 64-65 (Defs.' Ex. J). There is no evidence that Mr. Frey expressed this opinion with the implication of undisclosed, defamatory facts. Rather, it is undisputed that Mr. Arturi was a member of the OCM and was thoroughly familiar with the Retention Bonus Plan and Plaintiff's complaints about being excluded from the Plan. See Arturi Dep. at 17 (Defs.' Ex. J). Finally, it is undisputed that Mr. Frey's conversation with Marc Lipschultz simply entailed his explanation of the reasons why Plaintiff was not selected for a retention bonus. See Frey Dep. at 182-183 (Pl.'s Ex. C). Aside from Plaintiff's speculation, he cannot point to any evidence that Mr. Frey implied that his opinion was based on undisclosed, defamatory facts.[6] The bottom line is that all of the alleged statements at issue were statements of opinion, and, as such, they were not defamatory.

Second, Plaintiff mistakenly argues that Defendants' alleged statements constitute a "*per se* basis for Paren's recovery" because they "did indeed characterize Paren as uncooperative and not willing to go along and therefore not a 'key' employee" and characterized him as "overzealous and not doing his job." See Opp. Mem. 21. As a preliminary matter, this wishful assertion has no factual basis in the record evidence – indeed, it is undisputed that Mr. Craigie and Mr. Frey were satisfied with

---

[6] On page 18, citing to his Complaint for support, Plaintiff argues that "other employees demonstrated their belief in the substance of such statements as when, for example, Lynn Lafond, the Payroll Director, stated to Paren in the context of his reporting numerous incidents of corporate malfeasance, 'And we all know where that got you.'" Plaintiff does not identify "such statements." In any event, such hearsay cannot be considered on summary judgment – especially hearsay statements in Plaintiff's own Complaint. Bransford & Petz, P.C. 2005 WL 1668224 at *4-5.

10

Plaintiff's job performance and considered his actions to be <u>within</u> the scope of his job duties. <u>See</u> Craigie Aff. ¶5 (Defs.' Ex. B); Frey Aff. ¶13 (Defs.' Ex. F); Frey Dep. at 197-198 (Defs.' Ex. C). There is simply no basis for Plaintiff's assertion that Defendants considered him to be "uncooperative" and therefore not a "key employee."

In any event, there is no such thing as a "per se" recovery for defamation. <u>See</u> Opp. Mem. at 21. To prevail on a claim of defamation, a plaintiff must prove that the defendant was at fault for the publication of a false statement regarding the plaintiff, which was capable of damaging the plaintiff's reputation in the community, and which caused economic loss. <u>White v. Blue Cross & Blue Shield of Mass.</u>, 809 N.E.2d 1034, 1036 (Mass. 2004). These elements must be proven. In the case of slander (that is, verbal defamation), there is a narrow set of categories in which the plaintiff does not need to prove special damages (<u>i.e.</u>, damages for actual injury, including harm to reputation and mental suffering) if the statement charges the plaintiff with a crime, states that he is suffering from certain diseases, or "prejudice[s] him in his office, profession or business." <u>Lynch v. Lyons</u>, 20 N.E.2d 953, 955 (Mass. 1939). The last category is not satisfied unless the statements "impute to the plaintiff ... corruption, dishonesty, misconduct in his office, profession or business," or "the lack of some quality demanded in the lines of endeavor pursued by him." <u>Id.</u> None of the alleged statements at issue fall into this category. Again, it is undisputed that Mr. Craigie and Mr. Frey were satisfied with Plaintiff's job performance. <u>See</u> Frey Dep. at 138 (Defs.' Ex. C). It is further undisputed that Plaintiff was not selected to participate in the Retention Bonus Program based on factors related to the <u>function</u> of his job, rather than his job performance. <u>See</u> Frey Dep. 182-183 (Pl.'s Ex. C). There is no <u>per se</u> slander here.[7]

---

[7] In any event, even if Plaintiff could somehow demonstrate that any of the alleged statements constituted <u>per se</u> slander, this would merely relieve him from proving special damages. <u>See</u> <u>Ravnikar v. Bogojavlensky</u>, 782 N.E.2d 508, 511 (Mass. 2003). He would still need to prove all of the other elements of defamation (<u>e.g.</u>, publication and causation), which he cannot do.

11

Aside from pure speculation and conjecture, Plaintiff has failed to adduce a single piece of evidence establishing that Defendants' alleged defamatory statements caused Plaintiff not to be selected for participation in the Retention Bonus Plan, caused the termination of his employment by New Top-Flite, or caused him any type of economic loss. Given these circumstances, even if the conditional privilege did not apply (and, as discussed above, it does apply), Defendants are entitled to summary judgment with respect to Plaintiff's defamation claims.

> C. **This Court Should Grant Summary Judgment To Defendants With Respect To Plaintiff's Claims For Intentional Interference With Contractual And Business Relations (Counts III Through VI)**

Plaintiff concedes that he must establish that Defendants interfered with his contractual and/or business relations with "improper motive and means." See Opp. Mem. at 22.[8] However, Plaintiff fails to acknowledge that he must point to admissible evidence sufficient to warrant a finding of improper motive and means in order to avoid summary judgment. Bourque v. Cape Southport Assocs., LLC, 800 N.E.2d 1077, 1082-83 (Mass. App. Ct.), review denied, 806 N.E.2d 102 (Mass. 2004). Rather, Plaintiff asserts – over and over again, without record support – that Defendants acted malevolently and somehow retaliated against him "as punishment for his reports of numerous acts of corporate fraud and abuse." E.g., Opp. Mem. at 25 and passim. In the absence of record evidence establishing improper motive, Plaintiff is not entitled to a "free pass" to avoid summary judgment because he supposedly "blew the whistle" on alleged corporate improprieties.

---

[8] As some courts have stated another way, Defendants are entitled to a conditional privilege because their conduct at issue (e.g., retention bonus selections) were part of their job responsibilities, and this privilege can only be lost if Plaintiff can show improper motive or malice. E.g., Steranko v. Inforex, Inc., 362 N.E.2d 222, 235-36 (Mass. App. Ct. 1977); see also Sereni v. Start Sportswear Manfg. Corp., 509 N.E.2d 1203, 1206 (Mass. App. Ct. 1987). Plaintiff acknowledges that Defendants, as officers, acted within their job responsibilities in making retention bonus selections. See Pl. Dep. at 143-44 (Ex. 1 attached hereto).

12

### 1. There Are No Facts Sufficient To Warrant An Inference Of Improper Motive

Plaintiff argues that it is "well-settled" that "spiteful purpose or hostility may not always be direct and therefore malice may be shown by the proof of facts from which a reasonable inference may be drawn." See Opp. Mem. at 22-23. Thus, Plaintiff argues, Defendants must have acted with malice because "[r]easonable persons do not like to be told that their income should have been reported to the IRS if they did not report it." This argument is not only inconsistent with the case law; it is nonsensical. See Opp. Mem. at 23.[9]

An inference of malice or improper motive cannot be created out of thin air, as Plaintiff suggests.[10] In Gram v. Liberty Mutual Ins. Co., 429 N.E.2d 21 (Mass. 1981), cited by Plaintiff on page 23 of his Opposition Memorandum, the plaintiff sued his supervisors for terminating his employment, and argued that improper motive could be inferred because company policy did not, in fact, proscribe the conduct for which he was terminated and there was evidence that his supervisors did not like him and had expressed a desire that the plaintiff work out of a different location. Id. at 23-25. The Supreme Judicial Court of Massachusetts found that an inference of malice could be derived only from "probabilities rather than possibilities" based upon established facts. Id. at 24 (quotes and citations omitted). The Court held that the fact that the plaintiff's supervisors did not like him and erroneously believed that he had violated a company rule was insufficient to warrant an inference of malice: "An

---

[9] Taking this argument to its logical extreme, every risk manager in America would be immune from the "improper motive" requirement because breaking bad or difficult news is part of a risk manager's job.

[10] Causation cannot be created out of thin air, either. As demonstrated in the Introduction section above, all of the material facts relating to causation are undisputed. Plaintiff's assumptions to the contrary are just that – assumptions. E.g., Opp. Mem. at 26 ("It would be unreasonable to assume that Mr. Varga was not affected by Frey's longstanding and verbal disrespect for Paren, particularly since it was continued and advanced by Craigie."). Moreover, Plaintiff's suggestion that there is some sort of causal connection between selection for a retention bonus and retention by Callaway is illogical and undermined by the facts. Mr. Varga participated in the Retention Bonus Plan and also received a supplemental bonus in June of 2003, and Callaway nonetheless terminated his employment in February of 2004. See Defs.' Mem. at 9, 13; Varga Aff. ¶6.

13

inference of the probability of malice, action motivated by spite, does not reasonably follow from a showing, in these circumstances, only of negligence or of sloppy and unfair business practices." Id. The Court accordingly reversed a jury verdict in favor of the plaintiff with respect to his interference with contractual relations claim, and directed the trial court to enter judgment in the supervisors' favor. Id. at 30.

In this case, Plaintiff has less facts to work with than the plaintiff in Gram. Essentially, he argues that because he was considered a "key employee" for various Company purposes in the past, then he should have been selected for participation in the Retention Bonus Plan by Mr. Craigie and Mr. Frey in 2002. Notably, Mr. Craigie and Mr. Frey had no involvement in determining whether Plaintiff was a "key employee" in those past instances (which occurred prior to either joining the Company), nor is there any evidence that these instances involved a retention bonus plan formulated in dire economic circumstances when the Company was on the verge of bankruptcy. See Frey Dep. at 15-16 (Defs.' Ex. C); Frey Dep. at 73-74 (Defs.' Ex. 3); Craigie Dep. at 142-45 (Defs.' Ex. D). In any event, the fact that Mr. Craigie and/or Mr. Frey used different criteria this time around does not mean that they acted with malice. Even if they acted pursuant to a "sloppy or unfair business practice" (and they did not), they still did not act malevolently. Gram, 429 N.E.2d at 24.[11] Moreover, even viewing the facts in a light most favorable to Plaintiff, Mr. Frey's "pain in the ass" comment simply reflected Mr. Frey's personal dislike of Plaintiff; nothing in the statement connotes that Mr. Frey intended to try to get rid of him.[12]

---

[11] Contrary to Plaintiff's assertions, the retention bonus selection criteria used by the OCM were entirely consistent with those set forth in the bankruptcy filing. See Opp. Mem. at 11, ¶76; compare Defs.' Ex. M, pp. 8-11, with Defs.' Mem. at 7 and record citations therein.

[12] Plaintiff's assertion that Mr. Frey "tried to terminate my position before his departure on at least one occasion" is misleading. See Pl. Aff. ¶¶69-70, 86 (Pl.'s Ex. A). In fact, when Mr. Craigie was considering a lay-off, Mr. Frey recommended that the entire Finance Department, including his own position, be eliminated as a cost-cutting measure. Ultimately, Mr. Craigie opted not to execute the lay-off. See Frey Dep. at 125-26 (Ex. 3 attached hereto); Craigie Dep. at 28-29 (Defs.' Ex. D). Moreover, Plaintiff's assertion that "Paren's reporting of people angered them," based upon Mr. Arturi's ambiguous testimony that Plaintiff "pissed off" unnamed "people," obviously is not evidence that Plaintiff's reports (continued).

14

Applying Gram, no "probability" of improper purpose can possibly be derived from these meager facts. Id.[13]

### 2. This Case Is Controlled By Two "Whistleblower" Cases In Which The Supreme Judicial Court of Massachusetts Refused To Infer Improper Motive

Gram is not the only decision of the Supreme Judicial Court of Massachusetts that applies here. Two cases cited by Defendants on page 32 of their Opening Memorandum – Shea v. Emmanuel College, 682 N.E.2d 1348, 1350-51 (Mass. 1997), and Wright v. Shriners Hospital For Crippled Children, 589 N.E.2d 1241, 1246 (Mass. 1992) – similarly support the proposition that improper motive will not be inferred simply because the plaintiff was a purported "whistleblower."

Plaintiff fails to acknowledge, let alone address, the Shea decision. In that case, Shea lodged an internal complaint regarding the apparent theft of funds in the office in which she worked, and her supervisor subsequently terminated her. Shea, 682 N.E.2d at 1349-50. Shea sued her employer and her supervisor for wrongful discharge and intentional interference with contractual relations, arguing that her supervisor had been motivated to terminate her in order to cover up his own responsibility for the alleged thefts. Id. at 1351. The Massachusetts Supreme Judicial Court found that Shea had stated a

---

necessarily angered Mr. Frey and Mr. Craigie. See Opp. Mem. at 2, ¶5.

[13] Plaintiff also relies upon Clement v. Rev-Lyn Contracting Co., 663 N.E.2d 1235, 1237 (Mass. App. Ct. 1996). In that case, the court held that where there is evidence that the defendant "acted both from malicious motives and a motive related to the corporation's legitimate interests," the plaintiff has the burden of proving that the defendant's actions were unrelated to any legitimate corporate interest, and accordingly reversing jury verdict in plaintiff's favor. Id. Even if there were evidence that Defendants acted with both an improper motive and a legitimate corporate interest, it is still Plaintiff's burden to show that their actions were unrelated to any legitimate corporate interest, and Plaintiff simply has not done so.

15

claim for wrongful discharge based upon a public policy exception to the at-will employment doctrine, but affirmed summary judgment for the employer because Shea had failed to adduce any evidence that

her discharge was, in fact, motivated by her internal reporting of the purported criminal activity. Id. at 1350. Similarly, because Shea could not point to any facts to establish an improper motive on her supervisor's part, the Court affirmed summary judgment for the supervisor on the intentional interference claim. Id. at 1351.

Likewise, the plaintiff in Wright, a nurse, reported her concerns about the patient care provided by her employer, a hospital, to an outside survey team, and she was subsequently terminated. Wright, 589 N.E.2d at 1246.[14] Wright brought wrongful discharge and intentional interference claims against her employer and her supervisor. Id. The Massachusetts reversed a jury verdict in Wright's favor, finding that, as a matter of law, evidence of retaliation alone "would not have warranted a finding of improper motive because, as we have held, a corporation had a right to discharge Wright for such a reason." Id. at 1246. Because the record was "devoid of evidence" of an improper motive, the Court held that the record was insufficient to warrant a verdict for Wright on either the wrongful discharge or intentional interference claims. Id.

This case is controlled by Shea and Wright. Viewing the facts in a light most favorable to Plaintiff (as we must, on summary judgment), Plaintiff – like Shea and Wright – lodged complaints regarding corporate improprieties and subsequently suffered adverse action (i.e., non-

---

[14] Plaintiff acknowledges the Wright case, but asserts that it stands for a proposition that is simply not accurate. See Opp. Mem. at 25.

16

selection for participation in the Retention Bonus Plan and later termination by New Top-Flite). However, like Shea, Plaintiff cannot point to any evidence that Defendants took action against him in retaliation for making such complaints, and for this reason alone, Defendants are entitled to summary judgment. Shea, 682 N.E.2d at 1349-50. Moreover, even assuming, arguendo, Defendants engaged in conduct that affected Plaintiff because he made complaints about corporate improprieties (and, as demonstrated in Defendants' Opening Memorandum and herein, this is a huge assumption not at all supported by the record evidence), Defendants would have had a right to do so as a matter of law, so long as the action was related to a legitimate business purpose. Wright, 589 N.E.2d at 1246. Again, Plaintiff cannot point to any evidence that Defendants acted with an improper motive or took action unrelated to a legitimate business purpose. As such, Plaintiff's intentional interference claims fail as a matter of law.[15]

### III. CONCLUSION

For the foregoing reasons and those set forth in their Opening Memorandum, Defendants James Craigie and Daniel Frey respectfully request that the Court enter summary judgment in their favor with respect to all of the Counts in Plaintiff's Complaint. Both Messrs. Craigie and Frey have been victimized long enough by the baseless and vindictive actions of Plaintiff, a former risk manager,

---

[15] Plaintiff's reliance upon Draghetti, supra, is misplaced. See Opp. Mem. at 23. In that case, it was undisputed that the police chief knew that his statements to the newspaper regarding the police officer were false when he made them. Draghetti, 626 N.E.2d at 869. As a result, the Court affirmed a jury verdict in the police officer's favor on his intentional interference claim against the police chief based upon a finding that there was sufficient evidence of improper motive. Id. at 870. This case is obviously distinguishable, as there is not an iota of evidence that Mr. Craigie or Mr. Frey took action against Plaintiff based upon criteria that they knew were false.

17

who has decided to force these two individuals to defend against a frivolous lawsuit and incur attorneys' fees and costs because of his disappointment in not being selected for a retention bonus program.

                    Respectfully submitted,

                    The Defendants
                    JAMES CRAIGIE, INDIVIDUALLY AND
                    DANIEL FREY, INDIVIDUALLY
                    By Their Attorneys

                    /s/ Jeffrey E. Poindexter
                    Jeffrey E. Poindexter, BBO #631922
                    Bulkley, Richardson and Gelinas, LLP
                    1500 Main Street, Suite 2700
                    Springfield, Massachusetts 01115
                    Tel. 413-781-2820; Fax. 413-785-5060

                    Of Counsel:
                    Steven R. Wall (admitted *pro hac vice*)
                    Tamsin J. Newman (admitted *pro hac vice*)
                    Morgan, Lewis & Bockius LLP
                    1701 Market Street
                    Philadelphia, PA  19103
                    215.963.4928/5201

Dated:  November 14, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above Reply Memorandum of Law of Defendants James Craigie and Daniel Frey In Support Of Their Motion For Summary Judgment and papers in support thereof were filed electronically and served upon Lisa Brodeur-McGan by first class mail on Monday, November 14, 2005.

    /s/Jeffrey E. Poindexter
Jeffrey E. Poindexter, Esquire